IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ARCHITECTURAL CAST STONE, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 6:23-CV-01136 |
| | ) |
| FEDERAL WHITE CEMENT, INC., | ) |
| | ) |
| Defendant. | ) |

**FEDERAL WHITE CEMENT, INC'S ANSWER TO PLAINTIFF'S
PETITION, AFFIRMATIVE DEFENSES AND COUNTERCLAIM**

NOW COMES Federal White Cement, Inc. ("FWC"), by its undersigned counsel, and in answer to the Petition filed by Architectural Cast Stone, Inc. ("ACS'). As an initial matter, FWC reserves the right to supplement or amend its answer based on future investigation or discovery. FWC states as follows:

1. Plaintiff Architectural Cast Stone, Inc. ("ACS") is a corporation organized and existing under the laws of the State of Kansas, with its principal place of business located in Wichita, Kansas.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 and therefore denies said allegations.

2. Defendant Federal White Cement, Inc. ("FWC") is a corporation organized and existing under the laws of the State of Delaware, and may be served through its registered agent, Registered Agents Legal Services, LLC, at 1013 Centre Rd., Suite 403S, Wilmington, DE 19805, or at the corporation's office address of P.O. Box 70607, Knoxville, TN 37938.

**ANSWER:** Defendant admits the allegations of paragraph 2.

3. The Court has proper jurisdiction over the parties, the subject matter, and venue in this action pursuant to K.S.A. § 60-308(b) and K.S.A. § 60-605(1). As set forth in further detail below, Plaintiff ACS's causes of action herein arise from a series of business transactions concerning a cement product acquired by ACS from FWC for use in ACS's manufacturing processes. Because FWC is not qualified to do business in this state, this action is properly brought in Sedgwick County, where ACS maintains its place of business.

**ANSWER:** The allegations in Paragraph 3 of the Petition state legal conclusions to which no response is required. To the extent an answer is required, Defendant denies the remaining allegations.

4. Plaintiff ACS designs, manufactures, and markets high-end precast concrete and cast stone products for use in commercial and architectural projects.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegations in Paragraph 4 of the Petition, and therefore denies the same.

5. Defendant FWC is a manufacturer of white Portland cement.

**ANSWER:** Defendant admits the allegations contained within Paragraph 5 of the Petition.

6. Defendant FWC was previously ACS's exclusive vendor of "Type I" Portland Cement used in ACS's manufacturing process at all times relevant to this matter.

**ANSWER:** The allegations of this paragraph are vague as to time, and Defendant denies the allegations contained within Paragraph 6 of the Petition.

7. In May of 2021, FWC made an express, written warranty to ACS that the "Type I White Portland Cement manufactured by [FWC] will meet the requirements of ASTM C150, *Standard Specification for Portland Cement*" in a letter from Joe Diedrich, FWC's Manager of Technical Services. ASTM (i.e. "American Society for Testing and Materials") is a source of

published guidance on industry standards applicable to a wide variety materials and products utilized in commercial manufacturing, including standards applicable to the chemical composition and performance of Portland Cement Types I, II, III, IIIA, and V.

**ANSWER:** Paragraph 7 of the Petition refers to a document which is not attached, which is a document that speaks for itself. To the extent the allegations of Paragraph 7 are inconsistent with the referenced document or are incomplete, Defendant denies the allegations.

8. Beginning in fall of 2021, ACS observed repeated issues in the quality of its produced products, with a high percentage of such products developing cracks and crazing along their surfaces during the curing process.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegations in Paragraph 8 of the Petition, and therefore denies the same.

9. ACS put great expenses and efforts toward determining the source of the sudden appearance of defects in its end-product, which included repeated testing of each step of its manufacturing process and consultation with its vendors and other experts in a search for solutions.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegations in Paragraph 9 of the Petition, and therefore denies the same.

10. Representatives of FWC were asked on multiple occasions whether the source of the manufacturing problem experienced by ACS could be a problem with the cement product sold by FWC and whether FWC had experience identifying similar issues in the past, which FWC's representatives denied in both respects. For example, in a letter to ACS dated April 19, 2022 from Joe Diedrich ("Diedrich"), Manager of Technical Services for FWC, Diedrich reasserted FWC's Type I Portland Cement sold to ACS complied with the industry standards outlined by ASTM, and blamed ACS's manufacturing process for the repeated failures seen in ACS's end-product. In his letter, Diedrich referenced a prior visit between Diedrich, FWC's Region Manager, Zack

DeVecchis, and ACS representatives in early January of 2022, during which Diedrich and DeVecchis suggested multiple causes for the issues seen by ACS, including the aggregate material used by ACS, the water supplied by the City of Wichita, and the molds used by ACS.

**ANSWER:** Paragraph 10 of the Petition refers to a document, which is a document that speaks for itself. To the extent the allegations of Paragraph 10 are inconsistent with the referenced document or are incomplete, Defendant denies the allegations. Defendant admits that plaintiff inquired of Defendant as to why its products were having issues, and that there could be many reasons why the products of Plaintiff were failing to meet Plaintiff's requirements or expectations. Defendant admits that it denied there were defects in the cement it provided.

11. ACS determined the source of the problem resulted from a heightened level of sulfur trioxide (SO3) within the chemical composition of the cement supplied by FWC in excess of the standards outlined by ASTM C150.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegations in Paragraph 11 of the Petition, and therefore denies the same.

12. ACS learned through a corporate member of the Cast Stone Institute that, less than two years prior, FWC had been hired for consulting work by a similar cast stone business experiencing the exact same problems as ACS with cracks developing in their manufactured product, and that FWC had concluded excess SO3 in the cement acquired from the business's third-party supplier was the source of the problem.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegations in Paragraph 12 of the Petition, and therefore denies the same.

13. FWC knew or should have known that the cement product it sold to ACS was defective.

**ANSWER:** Defendant denies the allegations in Paragraph 13 of the Petition.

14. At all times material hereto, FWC knew or had reason to know the particular purpose for which ACS acquired FWC's cement product, and that ACS relied on FWC's skill or judgment to select or furnish a cement product suitable for ACS's cast stone manufacturing process.

**ANSWER:**  Defendant denies the allegations in Paragraph 14 of the Petition.

15. ACS contacted FWC and advised Defendant that the cement product was defective and was causing ACS damages.

**ANSWER:**  Defendant admits the allegations contained within Paragraph 15 of the Petition.

16. ACS obtained an alternative supplier of Type I Portland Cement at heightened expense to attempt fulfilling orders that had been delayed as a result of FWC's defective product, but was nevertheless unable to fully recover resulting losses to its profits and business reputation.

**ANSWER:**  Defendant is without sufficient information to admit or deny the allegations in Paragraph 16 of the Petition, and therefore denies the same.

17. ACS detrimentally relied on FWC's affirmative representations that its cement product would conform to industry standards for Type I Portland Cement.

**ANSWER:**  Defendant is without sufficient information to admit or deny the allegations in Paragraph 17 of the Petition, and therefore denies the same.

18. FWC's actions and omissions have resulted in the breaches of an express warranty under the Kansas UCC pursuant to K.S.A. § 84-2-313(1)(a), the implied warranty of merchantability pursuant to K.S.A. § 84-2-314, and the implied warranty of fitness for a particular purpose pursuant to K.S.A. § 84-2-315.

**ANSWER:**  Defendant denies the allegations in Paragraph 18 of the Petition.

19. FWC's breach of warranties have directly resulted in damages to ACS in excess of $75,000.00 which are compensable under the Kansas UCC, including expenses incurred in good faith by ACS to purchase cement product in substitution of the defective product of FWC (K.S.A. § 84-2-712) as well as incidental and consequential damages resulting from FWC's breach (K.S.A. § 84-2-715).

**ANSWER:** Defendant denies the allegations in Paragraph 19 of the Petition.

20. Demand has been made on FWC, but FWC has refused to resolve this matter.

**ANSWER:** Defendant denies the allegations in Paragraph 20 of the Petition.

21. Defendant denies any and all allegations made and contained in Plaintiff's Petition which are not specifically admitted herein.

## AFFIRMATIVE DEFENSES

1. In further answer to Plaintiff's Petition, and by way of affirmative defense, Defendant states one or more claims in Plaintiff's Petition fails to state a claim upon which relief can be granted as against Defendant.

2. In further answer to Plaintiff's Petition, and by way of affirmative defense, Defendant states Plaintiff's claims against Defendant should be barred or diminished based on one or more of Plaintiff's failures to mitigate their alleged damages, if any, said damages being specifically denied.

3. In further answer to Plaintiff's Petition, and by way of affirmative defense, Defendant states that if Plaintiff sustained any damages allegedly caused or contributed to by Defendant, said damages being denied, then Plaintiff was not damaged to the extent claimed by Plaintiff.

4. In further answer to Plaintiff's Petition, and by way of affirmative defense, Defendant states that if Plaintiff sustained any damages allegedly caused or contributed to by Defendant, such damages being denied, then such damages were the result of acts and/or omissions of Plaintiff or of third parties providing materials or supplies or water to Plaintiff.

5. In further answer to Plaintiff's Petition, and by way of affirmative defense, Defendant states that if Plaintiff sustained any damages allegedly caused or contributed to by Defendant, such damages being denied, then such damages were the result of acts and/or omissions of others over whom Defendant had no control.

6. In further answer to Plaintiff's Petition and by way of affirmative defense, Plaintiff's claims are barred by its own unclean hands, and the doctrines of waiver, release, and/or estoppel.

7. In further answer to Plaintiff's Petition and by way of affirmative defense, one or more of Plaintiff's claims are barred because the named Defendant did not contract with the Plaintiff.

8. In further answer to Plaintiff's Petition and by way of affirmative defense, Plaintiff's claims are barred by or reduced by the doctrine of set-off as Plaintiff has not paid Defendant in full for materials provided by Defendant.

9. Defendant reserves the right to seek leave to amend its answer and affirmative defenses as further information is obtained and/or revealed during discovery.

WHEREFORE, having fully answered Plaintiff's Petition and raised its affirmative defenses, Defendant prays that Plaintiff take nothing by its Petition, and that Defendant be dismissed from this action, and awarded its costs and any and all further relief as the Court deems just and proper.

## COUNTERCLAIM

Defendant Federal White Cement, Inc. for its Counterclaim against Plaintiff Architectural Cast Stone, Inc., states as follows:

### COUNT I
### BREACH OF CONTRACT

1. Counterclaim Plaintiff or its wholly owned subsidiary Federal White Marketing, Inc. ("Counterclaim Plaintiff") contracted with Counterclaim Defendant ACS for the delivery of certain products described in the invoice attached as Exhibit A, and incorporated herein by reference.

2. Counterclaim Plaintiff supplied the materials described in the invoice attached as Exhibit A and performed all obligations of its agreement with Counterclaim Defendant ACS.

3. Counterclaim Defendant failed to perform its agreement to pay counterclaim Plaintiff for the materials described in Exhibit A.

4. As a direct result of Counterclaim Defendant's breach of contract, Counterclaim Plaintiff has sustained damages of $5,997.24.

5. Consistent with applicable law Counterclaim Plaintiff is entitled to interest on the sums owed in Exhibit A.

WHEREFORE Counterclaim Plaintiff prays for judgment against Counterclaim Defendant and that this Court grant Counterclaim Plaintiff any and all other relief to which it shows itself to be justly entitled.

Dated: July 28, 2023.　　　　　　　　Respectfully submitted,

**JAMES SOBBA, LLC**

*/s/ G. Edgar James*
G. EDGAR JAMES   (KS #22407)
4435 Main Street, Suite 910
Kansas City, Missouri 64111
Telephone: (816) 623-0544
ejames@jamessobba.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2023, I electronically filed the foregoing with the court's ECF system, which will send a notice of electronic filing to counsel.

/s/ *G. Edgar James*
Attorney for Defendant